IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

LIZZIE ARIZONA MCNEELY,

        Plaintiff,

v.                                  Case No.: 2:20-cv-00158

ANDREW M. SAUL,
Commissioner of the
Social Security Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. The matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings and the Commissioner's Brief in Support of Defendant's Decision, requesting judgment in his favor. (ECF Nos. 11, 14).

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's request for judgment on the pleadings to the extent that it requests

remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g); **DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

## I.    <u>Procedural History</u>

On August 30, 2016, Plaintiff Lizzie Arizona McNeely ("Claimant") filed an application for SSI, alleging a disability onset date of July 8, 2016 due to "ankle injuries, fibromyalgia, anxiety, GERD, diabetes, RLS, hypertension, asthma, depression, allergies, impingement of the shoulder, [and] seizures." (Tr. at 338-44, 355). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 121). Claimant amended her alleged onset date to April 5, 2015 and requested an administrative hearing, which was held on January 9, 2019 before the Honorable Nathan Brown, Administrative Law Judge (the "ALJ"). (Tr. at 146-78, 352). By written decision dated January 24, 2019, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 118-45). The ALJ's decision became the final decision of the Commissioner on December 30, 2019 when the Appeals Council denied Claimant's request for review. (Tr. 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed an Answer opposing Claimant's complaint and a Transcript of the Administrative Proceedings. (ECF Nos. 7, 8). Claimant filed a Memorandum in Support of Motion for Judgment on the Pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision.

(ECF Nos. 11, 14). Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 33 years old on her amended alleged onset date and 37 years old on the date of the ALJ's decision. (Tr. at 137). She completed high school, communicates in English, and previously worked as a certified nursing assistant (CNA). (Tr. at 169, 354, 356).

## III.    Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 416.920(d). If so, then the claimant is found

3

disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 416.920(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ

rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(4).

Here, the ALJ confirmed at the first step of the sequential evaluation that Claimant had not engaged in substantial gainful activity since April 5, 2015, the

amended alleged disability onset date. (Tr. at 123, Finding No. 1). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: epilepsy/seizure disorder, migraines, fibromyalgia, obesity, diabetes mellitus with neuropathy, gastroparesis and gastritis, osteoarthritis of the left shoulder, coronary arthrosclerosis of both legs, hyperlipidemia, leg length discrepancy, depressive disorder, generalized anxiety disorder, and borderline intellectual functioning. (*Id.*, Finding No. 2). The ALJ also considered Claimant's asthma, hypertension, hypothyroidism, and gastroesophageal reflux disease (GERD), but found that the impairments were non-severe. (Tr. at 124). He further determined that Claimant's knee and chest pain were not medically determinable impairments. (*Id.*). Under the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 124-30, Finding No. 3). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) as able to lift and carry ten pounds occasionally, stand and walk for 2 hours in an 8 hour day, and sit for 6 hours in an 8 hour day, except this individual needs an assistive device to ambulate on all [surfaces]. She can climb ramps and stairs occasionally, but never climb ladders, ropes, or scaffolds. This individual can occasionally balance, stoop, kneel, and crouch, but can never crawl. She can never work at unprotected heights, around heavy or hazardous machinery, and can never operate a motor vehicle. This individual can frequently work in odors, dusts, fumes, pulmonary irritants, and in extreme cold. Mentally, she is able to perform simple, routine and repetitive tasks and is able to perform simple, work-related decisions. She is able to interact occasionally with supervisors and coworkers, but is never able to interact with the public. This individual requires a low-stress environment, defined as an environment with no fast-pace[d] production requirements or strict time standards, with occasional decision-making, and with only occasional changes in a routine work setting. The individual must have access to a rest room facility. She would be off-task less than 9% of the workday.

(Tr. at 130-37, Finding No. 4).

At the fourth step, the ALJ determined that Claimant could not perform her past relevant work. (Tr. at 137, Finding No. 5). Therefore, the ALJ reviewed Claimant's work experience, age, and education in combination with Claimant's RFC to determine her ability to engage in substantial gainful activity. (Tr. at 137-38, Finding Nos. 6 through 9). The ALJ considered that (1) Claimant was born in 1981 and was defined as a younger individual on the date that she filed the application for benefits; (2) Claimant had at least a high school education and could communicate in English; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled," regardless of Claimant's transferable job skills. (Tr. at 137, Finding Nos. 6 through 8). Taking into account these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform other jobs that existed in significant numbers in the national economy, including work as a toy and equipment assembler, grader/sorter, or table worker. (Tr. at 137-38, Finding No. 9). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act. (Tr. at 138, Finding No. 10).

## IV.    **Claimant's Challenge to the Commissioner's Decision**

Claimant asserts two challenges to the Commissioner's decision, both of which concern the ALJ's RFC finding. First, Claimant argues that the ALJ did not provide any explanation for his assessment that Claimant would be off-task for no more than nine percent of the workday. (ECF No. 11). Claimant notes that there was no medical or lay evidence suggesting that figure, and she contends that the only explanation was that the VE testified that a person who was off-task more than nine percent of the workday could not maintain employment. (*Id.*). Second, Claimant argues that the ALJ erred in not

including RFC limitations related to her gastritis and gastroparesis or explaining why no further limitations were necessary. (*Id.*).

The Commissioner argues that substantial evidence supports the ALJ's evaluation of Claimant's gastritis and gastroparesis. (ECF No. 14 at 9). The Commissioner states that the ALJ adequately explained that the record supported his assessment that the conditions required Claimant to have access to restroom facilities and she would be off-task less than nine percent of the workday. (*Id.*). The Commissioner notes that the VE testified that the distance from restroom facilities and the frequency and length of restroom breaks would be factored into the off-task limitation. (*Id.*). Furthermore, the Commissioner argues that Claimant points to no contrary evidence, other than her own self-serving statements, that indicated more severe limitations. Notably, the Commissioner states that Claimant's physicians did not offer work-related limitations related to gastroparesis and gastritis, and her progress notes did not corroborate complaints or exacerbations, but instead showed that she denied abdominal pain, diarrhea, and vomiting, and she gained weight. (*Id.* at 9-10).

## V.   Relevant Evidence

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A. Education Records

On January 27, 1989, when Claimant was in the second grade, she underwent a psychological evaluation because she was performing below grade level. (Tr. at 453). On the WISC-R test, her verbal IQ score was 78, her performance IQ score was 77, and her full scale IQ score was 76 +/- 3. (*Id.*). Based on the assessment, the psychologist

recommended that Claimant remain in her regular education class, but that she receive remedial services in all academic areas. (Tr. at 454).

### B. Treatment Records

On April 30, 2015, Claimant presented to Deanna Pauley, PA-C for follow up of diabetes, hypertension, anxiety, GERD, hypothyroid, and asthma. (Tr. at 459). Claimant denied weight loss and gastrointestinal symptoms, including diarrhea, nausea, stool incontinence, or vomiting. (Tr. at 460). Her physical examination was unremarkable. PA-C Pauley prescribed Lexapro for Claimant's anxiety and Omeprazole for GERD. (Tr. at 461).

Claimant also reported anxiety to family medicine physician, Amy Sayre, M.D., on July 21, 2015. (Tr. at 473). Claimant confirmed that Lexapro helped her anxiety symptoms, but she scratched and picked at her skin constantly. (*Id.*). Her physical examination was essentially normal, except for boggy nasal mucosa and excoriated patches of skin on her arms and neck. Dr. Sayre prescribed Vistaril for the scratching and anxiety. (Tr. at 475).

Claimant followed up with PA-C Pauley on March 23, 2016. Claimant complained that her nine-year-old son was "giving her trouble at home." (Tr. at 465). PA-C Pauley renewed Claimant's prescriptions for Lexapro and Omeprazole. (Tr. at 467). During Claimant's follow-up visit with Dr. Sayre on July 12, 2016, Claimant denied abdominal pain, acid reflux/heartburn, blood in her stool, constipation, diarrhea, frequent heartburn, nausea, or vomiting. (Tr. at 463). At her appointment on October 25, 2016, Claimant still denied abdominal pain, but reported suffering from explosive diarrhea, which she thought might be related to her medication Metformin. (Tr. at 591-92). Dr.

Sayre prescribed extended release Metformin in place of the immediate release version of the medication. (Tr. at 593).

On March 2, 2017, Claimant presented to her gynecologist, Devin Ciliberti, M.D., regarding irregular periods. Claimant denied nausea, vomiting, abdominal pain, bowel movement changes, or depression. (Tr. at 642). Dr. Ciliberti noted that Claimant was fully oriented, active, and alert with a normal mood and affect during the appointment. (*Id.*). Shortly thereafter, Claimant presented to Lauren Linville, APRN, FNP, complaining of frequent diarrhea, urinary loss of control, scabs in various stages of healing on her body over the past year, depression, sleep disturbances, and anxiety. (Tr. at 634, 637). On examination, Claimant displayed good judgment and normal mood, affect, and memory, and she was active, alert, and fully oriented. (Tr. at 637). Nurse Linville recorded that Claimant claimed to have memory problems due to seizures, but she had no problems with recalling her health history during the examination. (*Id.*).

On April 27, 2017, Claimant presented to Corey Greene, PA-C, regarding the areas of rash on her body. On examination, Claimant had areas of excoriated erosion with surrounding erythema and warmth on her arms, legs, and abdomen where she had picked at her skin. (Tr. at 627). PA-C Greene diagnosed Claimant with neurodermatitis and prescribed Keflex and a Silvadene cream. (*Id.*). He also referred Claimant to a psychiatrist. (Tr. at 628). Claimant followed up with Nurse Linville on June 6, 2017 and she reported no abdominal pain, vomiting, diarrhea, GERD, depression, or sleep disturbances. (Tr. at 632).

Cynthia B. Kelly, LGSW, performed a diagnostic assessment of Claimant on June 28, 2017 regarding Claimant's reported depression with anxiety and panic attacks. (Tr.

at 674-75). Claimant said that she lived with her husband and her son, whom she homeschooled since preschool. (*Id.*). On examination, Claimant appeared clean and of normal weight, but disheveled. (Tr. at 675). She was cooperative, calm, and maintained eye contact. (*Id.*). Her speech was fluent, clear, with normal volume. (*Id.*). In addition, Claimant was oriented in all spheres; her memory was intact; she displayed average intelligence; her mood was euthymic; and her affect was pleasant, happy, euphoric, and congruent to her thought content. (*Id.*). Claimant's insight, judgment, and thought processes were also intact. (*Id.*). Social Worker Kelly diagnosed Claimant with mixed anxiety and depressive disorder, and advised her of methods to reduce her symptoms, including re-evaluating her thoughts, journaling, and performing guided meditation. (*Id.*). Claimant was receptive to the suggestions, and her prognosis for reducing her symptoms was listed as "good." (*Id.*).

On July 8, 2017, Claimant was examined at Boone Memorial Hospital concerning dental pain. She denied abdominal pain, nausea, diarrhea, constipation, depression, or anxiety. (Tr. at 692). On examination, Claimant's abdomen was not distended or tender, and she had normal bowel sounds. (*Id.*). She was awake, alert, and well-nourished with appropriate mood and affect. (*Id.*). During a follow-up session with Social Worker Kelly on July 13, 2017, Claimant stated that she had issues disciplining her son, whom she said threw things at her, hit her, and lied. (Tr. at 666). (*Id.*). Claimant's mental status examination findings were normal. (*Id.*). She no longer appeared disheveled. (*Id.*). Claimant reported to Social Worker Kelly on August 1, 2017 that she continued to pick at her skin to calm herself when anxious. (Tr. at 661). (*Id.*). Claimant explained that she had diabetes and was taking Neurontin, so she was able to pick at her skin without

feeling pain. (*Id.*). Social Worker Kelly recorded Claimant's normal mental status examination findings on August 23, 2017. (Tr. at 730).

Claimant denied depression during her appointment with Nurse Linville on September 8, 2017. (Tr. at 720). She was active and alert and displayed good judgment and normal mood and affect. (Tr. at 721.). However, on the same date, Bernard Grose, PA-C, noted that Claimant complained of depression, and she appeared overweight with body odor and soiled clothing. (Tr. at 725-26). Claimant was cooperative and calm, and she maintained eye contact with normal speech and intact memory, judgment, and thought processes, but she reported hallucinations and had a sad affect. (Tr. at 726). Shortly thereafter, Social Worker Kelly recorded Claimant's normal mental status examination findings on September 13, 2017. (Tr. at 716-17).

On October 11, 2017, Claimant followed up with Social Worker Kelly regarding mixed anxiety and depression. (Tr. at 705). Claimant appeared disheveled and overweight, but her mental status examination findings were otherwise normal. (Tr. at 708). In terms of daily activities, Claimant continued to homeschool her son, she took a one hour nap in the middle of the day, and a caregiver came to her home and assisted her for two hours. (*Id.*). Claimant also set a goal of working 30 to 60 minutes per day to declutter her home, seven buildings, and a bus on her property in an effort to address her hoarding behaviors. (*Id.*).

On December 8, 2017, Nurse Linville noted that Claimant still had scratches and scabs from picking at her skin, but she displayed good judgment, was active and alert, and had normal mood and affect. (Tr. at 699). Nurse Linville prescribed Lexapro. (Tr. at 700). Claimant presented to Boone Memorial Hospital on April 3, 2018, reporting

symptoms of a kidney stone, but she denied nausea, vomiting, abdominal pain, diarrhea, or constipation. (Tr. at 853). Claimant underwent an esophagogastroduodenoscopy (EGD) with biopsy and bougie dilation on April 5, 2018 to evaluate her complaints of pain and fatty liver. (Tr. at 747). Her gastroenterologist, Bassam Haffar, M.D., diagnosed Claimant with severe gastroparesis, gastritis, and an esophageal stricture, which was dilated with a bougie catheter. (*Id.*). Later that month, on April 26, 2018, Claimant presented to Boone Memorial Hospital complaining of chest pain. (Tr. at 920). She denied abdominal pain, nausea, or vomiting. (Tr. at 921).

Claimant followed up with Nurse Linville on May 1, 2018. She complained of GERD, but she denied abdominal pain, vomiting, diarrhea, or depression. (Tr. at 756). She still had some scabs on her body, but she displayed good judgment and normal mood and affect, was fully oriented, active, and alert, and her recent memory was normal. (Tr. at 757). Claimant again denied depression during her appointment with Nurse Linville on May 23, 2018. (Tr. at 802). Dr. Haffar performed another EGD with biopsy and bougie dilation on May 31, 2018 to evaluate Claimant's GERD, indigestion, bloating, and abdominal pain. (Tr. at 961). He diagnosed Claimant with multiple gastric ulcers, Barrett's esophagus, a dilated esophageal stricture, and a hiatal hernia. (*Id.*). Dr. Haffar prescribed an antacid and recommended a repeat EGD in "a couple of months" to assure that the ulcers healed. (*Id.*). Dr. Haffar took biopsies of Claimant's gastrointestinal tract on July 31, 2018 to further evaluate her GERD, bloating, and ulcers. (Tr. at 1098-99). He diagnosed Claimant with gastritis and noted that he needed to rule out celiac disease. (Tr. at 1098).

On August 20, 2018, Claimant presented to podiatrist, Jamie Hall-Jasper,

D.P.M., regarding ingrown toenails. (Tr. at 985). She complained of reflux, but she denied diarrhea, nausea, vomiting, disorientation, or memory loss. (Tr. at 986). During her follow-up appointment with Dr. Hall-Jasper, Claimant was doing well. (Tr. at 989). She again reported reflux symptoms, but denied diarrhea, nausea, vomiting, disorientation, or memory loss. (Tr. at 990).

### C. Opinion Evidence

On December 16, 2016, Deidre Parsley, D.O., performed an Internal Medicine Examination of Claimant. Claimant stated that she was prescribed Prilosec for abdominal pain and GERD. (Tr. at 600). However, she denied nausea, vomiting, recent changes in bowl habits, melena, hematochezia, hematemesis, or recent weight changes. (*Id.*). State agency physician, Caroline Williams, M.D., assessed on January 9, 2017 that Claimant could perform a limited range of light work. (Tr. at 219-22).

On January 16, 2017, Psychologist Nicole M. Smith, M.A., completed a Neuropsychological Screening Profile of Claimant. (Tr. at 605). Claimant stated that she resided with her husband and minor son. (*Id.*). She complained of having "bad nerves" and an inability to focus or concentrate. (Tr. at 606). She also reported having "accidents" as a result of bowel and kidney problems. (*Id.*). Claimant related that she graduated from high school with "pretty good grades," although she was in "special math and reading classes" and she was retained in the third grade. (*Id.*). Her last employment was as a CNA, and she worked in that position for ten years. (*Id.*). Ms. Smith diagnosed Claimant with major depressive disorder that was recurrent and moderate, generalized anxiety disorder, excoriation disorder, and borderline intellectual functioning. (Tr. at 611). James W. Bartee, Ph.D., assessed on February 7, 2017 that Claimant had moderate

limitations in cognitive functioning, social functioning, concentration persistence or pace. (Tr. at 216-17, 223-24).

### D. Claimant's Statements

Claimant completed a series of forms to assess her eligibility for home caregiving assistance. On October 2, 2015, Claimant denied bowel incontinence. (Tr. at 1128). On April 13, 2015, she similarly recorded that her bowel habits were normal with no diarrhea, constipation, or incontinence (Tr. at 1238). However, on April 6, 2016, Claimant stated that she suffered from diarrhea causing partial bowel incontinence, and she again reported partial bowel incontinence on October 12, 2016. (Tr. at 1219, 1226). On April 20 and October 12, 2017 and October 5, 2018, Claimant recorded that her bowel habits were normal with no diarrhea, constipation, or incontinence. (Tr. at 1184, 1203, 1211).

Claimant also testified during her administrative hearing on January 9, 2019. She claimed that she had concentration and memory impairments, which made it difficult to complete tasks. (Tr. at 155). For instance, Claimant stated that she would forget to put clothes in the washing machine or dryer. (*Id*.). Claimant claimed that her husband reminded her to take her medication and attend her appointments. (Tr. at 156). She had an in-home caregiver for three hours per day, five days per week, who reminded her to take her medication when her husband was not home and helped with household chores and tasks. (Tr. at 158). Her caregiver was provided by the state. (Tr. at 166). Claimant also testified that she suffered from acid reflux that caused nausea and diarrhea with sudden urges to use the restroom. (Tr. at 160). She said that she had accidents, if she did not reach the restroom in time, and she wore protective undergarments most of the time.

(Tr. at 160-61, 166-67). In terms of activities, Claimant testified that she grocery shopped monthly with her husband, but she felt overwhelmed being around a lot of people. (Tr. at 163-64).

## VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.    Discussion

Claimant argues that the Commissioner's decision is unsupported by substantial

evidence because the ALJ did not explain the basis for the RFC limitation that she would be off-task no more than nine percent of the workday, nor did the ALJ include proper RFC restrictions to account for Claimant's gastritis and gastroparesis. SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* According to the Ruling, the ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3.

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." *Id.* Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each

conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7.

While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

### A. *Off-Task Limitation*

In this case, the ALJ determined that Claimant would be off-task less than nine percent of the workday due to: (1) her moderate restriction in maintaining concentration, persistence, or pace, (2) her moderate restriction in understanding, remembering, or applying information, and (3) her testimony that she required frequent access to the restroom. (Tr. at 135). However, while the ALJ's foregoing explanation provided some insight into the impairments that caused Claimant to be off-task, the ALJ did not discuss or provide any support for his determination that Claimant would be off-task precisely "less than 9% of the workday." As Claimant indicated, that limitation does not correspond to her statements or testimony, any medical opinion, or other medical evidence in the record. Rather, the only reference to a less than nine percent limitation occurred when the ALJ asked the VE, "[a]t what point does an individual's off-task time preclude employment," and the VE responded that "anything greater than 9% of the

workday." (Tr. at 171-72). The ALJ referenced the VE's testimony, noting in the decision that a person who was off-task more than nine percent of the workday was not employable. (Tr. at 138). The ALJ provided no other explanation for his off-task assessment.

While an ALJ is not obligated to base each conclusion in the RFC assessment on a specific piece of evidence, "a proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion," and "[t]he second component, the ALJ's logical explanation, is just as important as the other two." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019), *as amended* (Feb. 22, 2019). In this case, it is impossible for the reviewing Court to determine if the ALJ's assessment that Claimant would be off-task for less than nine percent of the workday is supported by substantial evidence without knowing the basis for the figure. Moreover, the ALJ's failure to explain the specific "less than nine percent" limitation cannot be considered harmless in light of the VE's testimony that a relatively small increase would preclude competitive employment.

Therefore, because the ALJ's RFC discussion lacks sufficient analysis and explanation to support the ALJ's conclusion that Claimant would be off-task for no more than nine percent of the workday, and the undersigned cannot conclude that the ALJ's error was harmless, the undersigned **FINDS** that the Commissioner's decision is not supported by substantial evidence. *See, e.g., Richardson v. Saul*, No. 4:19-CV-00128-FL, 2020 WL 3816317, at *6 (E.D.N.C. June 9, 2020), *report and recommendation adopted,* 2020 WL 3799344 (E.D.N.C. July 7, 2020) ("ALJ Anderson found that Richardson would be off-task due to pain and medication side effects. While this explains why she would be off-task, it does nothing to inform a reviewing court of how

ALJ Anderson arrived at the figure—-nine percent of the workday—-or what evidence in the record supports this calculation.") (collecting cases); *Owens v. Saul*, No. 1:19-CV-00204, 2020 WL 4812697, at *10-11 (S.D.W. Va. Apr. 17, 2020), *report and recommendation adopted,* 2020 WL 4805451 (S.D.W. Va. Aug. 18, 2020); *Conary v. Berryhill*, No. 2:18-CV-01228, 2019 WL 3216041, at *9 (S.D.W. Va. June 25, 2019), *report and recommendation adopted sub nom. Conary v. Saul,* 2019 WL 3211268 (S.D.W. Va. July 16, 2019); *Carter v. Berryhill,* No. 2:17-CV-04399, 2018 WL 4381275, at *11-12 (S.D.W. Va. Apr. 11, 2018), *report and recommendation adopted,* No. 2:17-CV-04399, 2018 WL 4169108 (S.D.W. Va. Aug. 30, 2018); *Fisher v. Comm'r, Soc. Sec.,* No. CV RDB-17-3165, 2018 WL 3348858, at *3 (D. Md. July 9, 2018), *report and recommendation adopted,* 2018 WL 5309788 (D. Md. Aug. 1, 2018); Cf. *Painter v. Berryhill,* No. 2:17-CV-04435, 2018 WL 5904510, at *11-12 (S.D.W. Va. Oct. 19, 2018), *report and recommendation adopted,* 2018 WL 5891750 (S.D.W. Va. Nov. 9, 2018) (finding that a five percent off-task limitation was supported by substantial evidence when it was based on Claimant's specific testimony regarding the frequency and length of her restroom breaks and other evidence that collectively tied into the five percent figure).

Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reconsider or elaborate on the off-task limitation in Claimant's RFC.

### B. Restroom Breaks

In a related argument, Claimant indicates that the ALJ should have included more specific restroom restrictions in her RFC to account for her gastritis and

gastroparesis. (ECF No. 11 at 10-11). Claimant acknowledges that the ALJ included the RFC limitation that she must have access to a restroom facility, but she argues that the restriction was a pretense because, as the VE indicated, nearly all employers provide access to restroom facilities. (*Id.* at 11). According to Claimant, if the ALJ had included a more specific limitation, such as certain time away from the workstation or the maximum distance from the workstation to the restroom, it "likely" would have precluded employment. (*Id.*).

The ALJ concluded at step two of the sequential analysis that Claimant's gastritis and gastroparesis were severe impairments. (Tr. at 123). In the RFC discussion, the ALJ noted that Claimant alleged that she suffered from gastritis with acid reflux, nausea, and diarrhea that caused her to have the sudden need to use the restroom. (Tr. at 131). The ALJ found that, although Claimant's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence. (*Id.*). The ALJ discussed the medical evidence concerning Claimant's gastritis and gastroparesis. (Tr. at 132). The ALJ also considered Claimant's consultative examination; the opinion evidence; and Claimant's activities, which included homeschooling her child, attending church twice per week, decluttering her home, and taking daily walks. (Tr. at 133, 135-36). After weighing the evidence, the ALJ specified in Claimant's RFC assessment that Claimant must have access to a restroom facility, and she would be off-task for no more than nine percent of the workday. (Tr. at 130, 132, 135).

Claimant does not cite any evidence to support her argument that the ALJ should

have included a restriction that she must work in a certain proximity to a restroom. Moreover, the record supports the ALJ's finding that such a restriction was not warranted. There were no opinions suggesting that Claimant must work a certain distance from a restroom. Furthermore, while the medical evidence documented Claimant's gastrointestinal diagnoses and her occasional complaints of diarrhea, she most frequently denied abdominal pain, nausea, diarrhea, or vomiting. (Tr. at 460, 463, 632, 634, 642, 692, 756, 853, 921, 986, 990). Therefore, the evidence supported the ALJ's assessment not to include a restriction that Claimant's workstation be located a certain distance from the restroom.

However, despite the foregoing evidence, the ALJ found that Claimant would be off-task for a specific percentage of the workday due, in part, to her need for frequent restroom breaks. As previously discussed, the ALJ did not provide any meaningful explanation for the specific off-task limitation. There was no testimony, evidence, or discussion regarding how many bathroom breaks are customarily tolerated in a workday, how many restroom breaks Claimant required during the workday, the duration of Claimant's restroom breaks, or any other factors to indicate how the ALJ arrived at the less than nine percent figure. Therefore, because the ALJ assessed the specific off-task limitation, he was obligated to explain it, particularly because of its impact on the ultimate determination of disability. On remand, the undersigned **RECOMMENDS** that the ALJ specifically reconsider or elaborate upon his finding regarding Claimant's need for frequent restroom breaks and the impact of Claimant's need for restroom breaks on her RFC.

## VIII.  **Recommendations for Disposition**

Based on the foregoing, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 11), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir.

1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Goodwin, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** September 4, 2020

Cheryl A. Eifert
United States Magistrate Judge